IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Trovon Aquarius Keith, #272473, | ) | C/A No. 1:09-2685-RMG-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| R. Hilton, Cpl. Terry, Ofc. Belton, John B. McRee, Vera E. Courson, Mr. Oberman, Ms. Breon, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Trovon Keith filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is Defendants' Motion for Summary Judgment [Entry #47]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

I.    Factual and Procedural Background

Plaintiff complains of several incidents which he believes violated his constitutional rights. First, Plaintiff contends that defendants Hilton and Oberman improperly failed to reassign him to a one-man cell when he requested the same due to his anti-social personality disorder. Second, Plaintiff claims that defendants Terry and Belton failed to provide him with medical assistance and made inappropriate statements as Plaintiff allegedly suffered from a seizure. Third, Plaintiff believes that defendants McRee and Courson were deliberately indifferent to his medical care when the alleged

seizure occurred. Specifically, Plaintiff complains that McRee improperly reported that Plaintiff was manipulating medical services in his medical records. He complains that Courson improperly failed to order he be taken to medical when she observed him after he claims he had a seizure. Finally, Plaintiff claims that defendant Breon discriminated against him by not serving as his counselor because of his sexual misconduct charges.

Plaintiff filed his complaint in this action on October 15, 2009. Defendants filed a motion for summary judgment on April 23, 2010. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion [Entry #48]. Plaintiff filed responses in opposition to Defendants' Motion [Entries #50 and #53]. Having carefully considered the parties' submissions and the record in this case, the court recommends Defendants' motion for summary judgment be granted.

II. Discussion

    A. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set

forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." *Id*. The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be no genuine issue of material fact.

  B. Claims against defendants Hilton and Oberman

Plaintiff complains that defendants Hilton and Oberman have violated his rights by refusing to reassign him to a single man cell. Plaintiff complains that he has antisocial personality disorder which causes him to "get angry and frustrated when [he is] around a person for a long period of time." Compl. at 8. Plaintiff claims that Hilton and Oberman's failure to house him in a single cell constitutes cruel and unusual punishment.

First, to state a cognizable Eighth Amendment claim related to prison conditions, a two-pronged showing is necessary: (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials. *Williams v. Griffin*, 952 F.2d 820, 824-25 (4th Cir. 1991). It is well-established that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Contemporary standards of decency require that a state that restrains an individual's liberty so that he is unable to care for himself must provide for his basic human needs. *Id*. The Eighth Amendment is "implicated only in those cases where a prisoner is deprived of the 'minimal civilized measure of life's necessities.'" *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Conditions that are restrictive and even harsh "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. Many prisoners likely must deal with, and share a cell with, disagreeable and dishonest other persons who are also incarcerated. *See Ajaj v. United States*, 479 F.Supp.2d 501, 547–48 (D.S.C. 2007) (noting that a corrections facility is not a hotel and that it should be expected that conditions are oftentimes less than ideal).

There is no constitutional right for a state prisoner or federal prisoner to be housed in a particular institution, at particular custody level, or in a particular portion or unit of a correctional institution. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976) (holding that the Constitution's Due Process Clause does not "protect a duly convicted prisoner against

transfer from one institution to another within the state prison system"); *McKune v. Lile*, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"). In other words, the placement and assignment of inmates into particular institutions, units, or cells by state or federal corrections departments are discretionary functions, and those decisions are not subject to review unless state or federal law places limitations on official discretion. Although Plaintiff claims his request is based on a personality disorder, Plaintiff has produced no documentation from a doctor or medical professional indicating that his mental diagnosis requires him to be placed in a single person cell. Therefore, Plaintiff's claim against Hilton and Oberman cannot survive summary judgment.

    C.    Deliberate Indifference to Plaintiff's Serious Medical Needs

        1.    Defendants McRee and Courson

In his complaint, Plaintiff alleges McRee improperly reported in his medical records that he manipulated medical services, based on witness accounts and without a medical examination. Plaintiff also alleges Courson did not properly examine him after his alleged seizure or order security to take him to medical, and instead relied on officers' accounts of the incident.

In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain." *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met . . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

In *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff

may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in *Farmer v. Brennan*, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837–38.

Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v.*

*Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

In view of the above authority, Plaintiff's claim of medical indifference against McRee and Courson cannot survive summary judgment. Plaintiff claims that he was not properly examined after he allegedly suffered a seizure, but his medical records indicate he was observed by Courson during the seizure. *See* Medical Summary [Entry # 47-3]. After observing Plaintiff, she noted that he had no history of seizures and he had no head injuries. Courson reported her observation's in Plaintiff's medical records, and added that officers reported Plaintiff used a mirror to see when they were coming near his cell and removed it before he began shaking on the floor. Plaintiff has failed to set forth evidence demonstrating Courson had actual knowledge of a serious medical need of Plaintiff's and was deliberately indifferent to it. Additionally, while Plaintiff may object to McRee's notation in his medical records that Plaintiff manipulated medical services, he has failed to state a constitutional violation against McRee. Therefore, McRee and Courson are entitled to summary judgment.

    2.    Defendants Terry and Belton

Plaintiff claims that defendants Terry and Belton witnessed him having a seizure, but told him they believed he was faking and refused to request medical attention. Defendant Terry claims he called Nurse Courson in order to provide medical attention for Plaintiff. The Fourth Circuit has held that to bring a claim alleging the denial of medical

treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Although Plaintiff makes a conclusory allegation that Terry and Belton refused to provide to request medical attention, it is undisputed that Plaintiff did receive medical attention from defendant Courson following the alleged seizure. Therefore, Plaintiff's claim against defendants Terry and Belton should be dismissed.

    D.    Claim Against Defendant Breon

Plaintiff's claims against defendant Breon are based on alleged discrimination for her refusal to be his counselor due to his disciplinary record of infractions for sexual misconduct. Plaintiff claims "[t]his is discrimination due to the fact SCDC policy does not state an inmate disciplinary record will determine who[se] caseload he is assigned to." Defendant Breon concedes that "because of Mr. Keith's extensive history of sexual misconduct charges, assignment with a female counselor will try to be avoided." Breon Aff. [Entry #47-7]. However, Plaintiff further complains that Breon counsels other inmates with sexual misconduct charges.

Plaintiff has not set forth a viable claim against Breon. To the extent Plaintiff is claiming a violation of the Fourteenth Amendment, his claim must fail. Prisoners with extensive sexual misconduct charges do not constitute a protected class, and Plaintiff has

not alleged a fundamental right is involved. Additionally, Plaintiff has not shown a deliberate indifference to a serious medical need, as he has received treatment for his mental problems and complains only that Breon in particular is no longer assigned to him. Finally, Plaintiff has been unable to demonstrate he has been deprived of a basic human need. Therefore, Plaintiff's claim against Breon must fail.

E. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526

U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an

objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

III.    Conclusion

For the foregoing reasons, it is recommended that Defendants' Motion for Summary Judgment [Entry #47] be granted.

IT IS SO RECOMMENDED.

November 12, 2010  
Florence, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**